IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEANPAUL REYES,

    Plaintiff,

v.

MICHAEL BASSI,
JEFF ROSS,
CHRISTOPHER COVELLI, Individually,
and LAKE COUNTY, ILLINOIS,
a municipal corporation,

    Defendants.

1:25-cv-05873
Judge John Robert Blakey
Magistrate Judge Keri L. Holleb Hctaling
Cat 2 Random assignment

JURY TRIAL DEMANDED



FILED
MAY 27 2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

### INTRODUCTION

Plaintiff SeanPaul Reyes, proceeding pro se, alleges the following:

1. Nature of the Action: This is a civil rights action brought under 42 U.S.C. § 1983 to redress the violation of Plaintiff SeanPaul Reyes's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. Plaintiff's Role: Plaintiff is an independent journalist and founder of Long Island Audit, Inc., a media organization with over 2 million online subscribers. He reports on matters of public concern, including law enforcement and government accountability.

1

3. Summary of Incident: On May 23, 2025, Lake County law enforcement officers forced Plaintiff – under threat of arrest and seizure – to permanently delete constitutionally protected video recordings from his cell phone. This was done in retaliation for Plaintiff's exercise of his First Amendment right to film in a public government building.

4. Relief Sought: Plaintiff seeks compensatory and punitive damages, as well as declaratory relief, for the unlawful seizure and destruction of his recordings, retaliation for protected speech, and deprivation of due process, all committed under color of state law.

**JURISDICTION AND VENUE**

5. Federal Question Jurisdiction: This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiff's claims arise under the Constitution and laws of the United States (42 U.S.C. § 1983).

6. Venue: Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred in Lake County, Illinois, which is within this District and Division.

**PARTIES**

7. Plaintiff: SEANPAUL REYES is an adult resident of New York (address: 21 Mt Snow Lane, Coram, NY 11727). At all relevant times, he was engaged in constitutionally protected news-gathering and filming in a public forum.

8. Defendant Michael Bassi: Defendant MICHAEL BASSI is a Deputy Sheriff

employed by the Lake County Sheriff's Office. He is sued in his individual capacity. At all relevant times, Deputy Bassi was acting under color of state law as a law enforcement officer responding to the incident described in this Complaint.

9. Defendant Jeff Ross: Defendant JEFF ROSS is the Assistant Director of the Lake County Adult Probation Department. He is sued in his individual capacity. At all relevant times, Ross was acting under color of state law and was involved in enforcing the recording prohibition at the Adult Probation facility.

10. Defendant Christopher Covelli: Defendant CHRISTOPHER COVELLI is a Deputy Chief in the Lake County Sheriff's Office. He is sued in his individual capacity. At all relevant times, Deputy Chief Covelli was acting under color of state law and had supervisory authority over Deputy Bassi, including giving orders during the incident.

11. Defendant Lake County, Illinois: Defendant LAKE COUNTY, ILLINOIS is a municipal entity (county government) organized under Illinois law. Lake County is responsible for the policies, practices, and customs of the Lake County Sheriff's Office and, on information and belief, oversees or is responsible for the policies of the Adult Probation Department. At all relevant times, Defendants Bassi, Ross, and Covelli were employees or agents of Lake County or its subdivisions, acting within the scope of their official duties.

## FACTUAL BACKGROUND

12. Filming at Public Probation Office: On May 23, 2025, at approximately 12:00 p.m., Plaintiff entered the Lake County Adult Probation & Psychological Services Building at 215 West Water Street, Waukegan, Illinois. He did so to investigate and report on complaints his organization was made aware of regarding misconduct at that facility.

13. Peaceful Recording: Plaintiff began peacefully recording video in the publicly accessible lobby of the probation building. His purpose was to ask questions, observe public officials in the course of their official duties, and film matters of public concern in a public building open to the general populace.

14. Initial Confrontation: Shortly after Plaintiff began recording, a courthouse security officer approached and told Plaintiff that recording was prohibited. When Plaintiff inquired under what authority recording was forbidden, the officer could not cite a specific court order or statute. Instead, the officer referred Plaintiff to a supervisor for further explanation.

15. Reference to no recording signage: Assistant Director Jeff Ross then came into the lobby to address Plaintiff. Ross pointed to a sign on the wall that purported to ban recording in "courtrooms or its environs". Ross stated the no recording policy was implemented to protect the privacy of individuals in the public lobby.

16. Plaintiff Asserts His Rights: Plaintiff explained to Ross (and the security officer) that a posted sign cannot override the Constitutional right to film in a public area. Plaintiff asserted that his recording was a lawful exercise of First Amendment

4

freedoms, as he was in a public lobby where he had a right to gather information. Plaintiff remained calm and emphasized that he was not disrupting any operations – he was simply documenting public officials in a public space.

17. Deputy Bassi Arrives: Lake County Deputy Sheriff Michael Bassi then arrived on the scene, having been called, presumably by Assistant Director Jeff Ross, to address the situation. Deputy Bassi stated that the probation department lobby was considered an "environ" of the court where recording was prohibited and that plaintiff needed to cease recording. Plaintiff was unfamiliar with the term environ, being applied to a separate public building, he did not believe the lobby fell under any courtroom "environs" restriction. Plaintiff then noticed the signage included a QR code linking to Nineteenth Judicial Circuit Administrative Order No. 21-09.

18. Plaintiff Reviews Order: Plaintiff wanting to see the actual court order and not just a printed sign scanned the QR code and accessed Administrative Order 21-09 on his phone. Upon review, he found that the order did not expressly mention the Adult Probation Department or its lobby as a restricted area or "environ" The order prohibited photographing or recording in a "courtroom or its environs" except under certain conditions, but it did not define "environs" to include the probation office lobby. In fact, the order's description of "courtroom environs" was limited to spaces like hallways adjacent to courtrooms, jury assembly rooms, deliberation rooms, and similar areas inside court facilities.

19. Separate Building Not Covered: The Adult Probation building is a stand-alone facility located across the street from the main Lake County Courthouse. It is not a courtroom, nor is it attached to or inside the courthouse. Plaintiff noted that nothing in Administrative Order 21-09 identified the Adult Probation office (a separate public building) as part of the courthouse "environs." In short, the sign's & Deputy Bassi's claim that the probation department lobby was a prohibited "environ" had no clear basis in the actual text of the order.

20. Threat of Arrest for Recording: Plaintiff, not wishing to escalate the confrontation, agreed to leave the building after this discussion and after seeing that the sign had defined the Adult Probation Office and an "environ", though the actual order didn't. Plaintiff wanted to leave the facility to get further clarification from the court administrators office and his legal counsel. However, before Plaintiff could depart, Deputy Bassi told him in no uncertain terms that he must delete the video recordings he had already made. Plaintiff didn't understand this demand because this demand was not laid out in the actual order or the posted signage. Assistant Director Ross then suggested we speak further outside on the public sidewalk, plaintiff agreed. Once outside plaintiff asked deputy Bassi if he was being detained as plaintiff wanted to leave. Deputy Bassi informed plaintiff he was in fact being detained. Deputy Bassi again stated plaintiff needed to delete all video footage of this encounter from his cell phone or be arrested. This demand by Bassi went beyond asking Plaintiff to leave – it required Plaintiff to erase footage he had lawfully obtained, including content unrelated to any sensitive areas.

6

21. Supervisor's Order to Delete or Arrest: Surprised by this extreme instruction, Plaintiff asked Deputy Bassi to call a supervisor. Deputy Bassi then contacted his superior, Deputy Chief Christopher Covelli, via phone. Deputy Chief Covelli directly instructed (through Bassi) that Plaintiff had two options: (a) delete all the video footage he had recorded, or (b) be arrested for obstruction of justice and have his phone confiscated as evidence. In effect, Covelli authorized the threat that non-compliance with deletion would result in Plaintiff's arrest and the seizure of his device.

22. Coerced Deletion of Footage: Fearing unlawful arrest and the loss of his property, Plaintiff felt he had no choice but to comply. Under duress and with Deputy Bassi standing over him, Plaintiff proceeded to delete all the videos he had recorded that day from his phone. This forced deletion included not only footage taken inside the probation lobby, but also video Plaintiff had recorded outside on a public sidewalk. Deputy Bassi watched Plaintiff scroll through his phone and further instructed him to permanently erase the files from the "Recently Deleted" folder, ensuring the recordings were fully destroyed.

23. No Legal Process or Cause: At no point did Deputy Bassi or any official obtain a warrant, court order, or other judicial authorization to seize or destroy Plaintiff's recordings. Plaintiff was not served with any citation or summons, and he was not before any judge when these commands were made. There was no lawful justification given (such as a specific law or court rule) for ordering the deletion of Plaintiff's footage; the only basis cited was the vague reference to the administrative order which, by its terms, did not apply to the location of the

7

recording. The threat to arrest Plaintiff for "obstruction of justice" was baseless, as Plaintiff was not interfering with any judicial proceeding or law enforcement activity – he was simply filming quietly in a public area.

24. "Just Following Orders" – Indication of Policy: After Plaintiff deleted the videos, Deputy Bassi made a revealing statement. He told Plaintiff, in substance, "I don't make the orders; I'm just told what to do." Deputy Bassi expressly indicated that coercing individuals to delete recordings is what deputies "normally do" when someone is found filming. This statement strongly suggested that Deputy Bassi was acting pursuant to a broader policy, custom, or directive from his superiors (rather than any independent judgment) in forcing Plaintiff to erase his footage. Plaintiff, having secured his phone back (now empty of the videos), then left the premises.

## CAUSES OF ACTION

Count I – First Amendment Retaliation (42 U.S.C. § 1983)

25. Protected Activity: Plaintiff's act of recording government officials in a public building was protected First Amendment activity. Defendants' conduct – threatening Plaintiff with arrest and coercing him to delete his recordings – was taken in direct response to, and in retaliation for, Plaintiff engaging in that protected activity (filming a public lobby and public officials).

26. Retaliation Violates Clearly Established Rights: Defendants' actions had a chilling effect on Plaintiff's exercise of free speech and would deter a person of

ordinary firmness from continuing to film or to publish such recordings. Such retaliation against Plaintiff for filming in a public forum violates his clearly established First Amendment rights. It is "a basic, vital, and well-established liberty safeguarded by the First Amendment" for citizens to record law enforcement and public officials performing their duties in public . Every federal circuit to consider the issue, including the Seventh Circuit, has recognized that the act of making audio or video recordings is protected expression, as a corollary of the right to disseminate information . See Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) (affirming right to film police in public); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000) (First Amendment protects "the right to gather information about what public officials do on public property"); ACLU of Ill. v. Alvarez, 679 F.3d 583, 600 (7th Cir. 2012) ("The act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights" ). Defendants Bassi and Ross (and Covelli, as a supervisory actor) had no lawful justification to demand that Plaintiff stop filming, or destroy his footage, other than to suppress Plaintiff's expressive conduct. Their conduct was retaliatory and violated Plaintiff's First Amendment rights.

Count II – Fourth Amendment Unlawful Seizure (42 U.S.C. § 1983)

27. Destruction of Digital Property as Seizure: Defendants effectively seized and destroyed Plaintiff's property when Deputy Bassi, acting on Deputy Chief Covelli's orders, compelled Plaintiff to delete his video files under threat of arrest. For Fourth Amendment purposes, a "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in

that property. Forcing Plaintiff to permanently destroy his own video files – under coercion by law enforcement – constituted a complete deprivation of his possessory and dominion interests in those digital recordings.

28. Unreasonable and Warrantless Action: This compelled deletion was unreasonable and done without any warrant, consent, or exigent circumstance, in violation of the Fourth Amendment. Even in the context of a lawful arrest (which Plaintiff's situation was not), the U.S. Supreme Court has held that officers generally may not search or access the digital contents of a phone without a warrant . Here, Defendants went even further by ordering the outright destruction of digital content. Such a warrantless seizure and destruction of

Plaintiff's recordings was per se unreasonable and unconstitutional. Riley v. California, 573 U.S. 373 (2014) (holding that the Fourth Amendment prohibits warrantless search of digital information on a cellphone seized during an arrest). By coercing Plaintiff to delete (i.e., effectively seize and destroy) his video files, Defendants unreasonably interfered with Plaintiff's property and privacy rights in his personal effects.

Count III – Fourteenth Amendment (Procedural Due Process) (42 U.S.C. § 1983)

29. Deprivation of Property Without Due Process: Defendants, acting under color of state law, deprived Plaintiff of his property (the digital video files on his phone) without due process of law. The deletion/destruction of Plaintiff's recordings was carried out with no legal process whatsoever: Plaintiff was given no notice or opportunity to be heard by a neutral decision-maker before his property was effectively destroyed. There was no court order, no warrant, and no post-

deprivation remedy offered for the loss of his property. By coercing the irreversible deletion of Plaintiff's videos, Defendants denied Plaintiff his Fourteenth Amendment right to due process. The Constitution forbids government officials from arbitrarily dispossessing individuals of property or liberty interests without fair procedures. Defendants' conduct – summarily forcing Plaintiff to destroy his own files under threat of jail – shocks the conscience and violated fundamental principles of procedural fairness and due process.

Count IV – Municipal Liability (Monell Claim) – Lake County (42 U.S.C. § 1983)

30. Policy or Custom of Constitutional Violations: The constitutional violations described above were proximately caused by policies, customs, or practices of Defendant LAKE COUNTY, ILLINOIS, and/or by officials with final policymaking authority for Lake County and its Sheriff's Office. At all relevant times, Deputy Chief Covelli, who issued the deletion order, was an official with supervisory and decision-making authority in the Lake County Sheriff's Office, acting on behalf of the municipality.

31. Enforcement of Unlawful Directives: The directive to delete Plaintiff's recordings – issued by Deputy Chief Covelli and enforced on the ground by Deputy Bassi – reflects an official policy or a widespread custom of Lake County (through its Sheriff's Office) to unlawfully interfere with citizens' recordings of public officials. The fact that this order was given and executed without hesitation, and the reference to Administrative Order 21-09 being broadly

(mis)used to bar recording, indicate that County officials had established a practice of prohibiting and destroying recordings in public areas of County facilities. This custom or policy operates to suppress constitutionally protected activity (public filming) and to do so without due process, as experienced by Plaintiff.

32. "Just Following Orders" – Proof of Policy/Training Failure: Deputy Bassi's statement that he was "just told what to do" and that this was the normal course of action for someone recording demonstrates that his actions were undertaken pursuant to an official policy or directive within the Lake County Sheriff's Office. In other words, Lake County, through its Sheriff's Office, has either formally adopted or knowingly tolerated a practice whereby deputies threaten observers with obstruction charges and force them to delete video evidence of police or public officials. Furthermore, on information and belief, Lake County failed to train and supervise its officers adequately on the public's well-established right to record, thereby facilitating the infringements of Plaintiff's rights.

33. Monell Liability: Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality is liable under § 1983 when the execution of the government's policy or custom inflicts a constitutional injury. Here, Lake County's policy/custom of treating public recording as an arrestable offense – and ordering deletion of recordings as a standard procedure – was the moving force behind the violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights. Lake County, by and through its final policymakers, affirmatively

developed or at least condoned this practice, making the County responsible for the resultant constitutional deprivations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SeanPaul Reyes, pro se, respectfully requests that this Court enter judgment in his favor and grant the following relief:

    1.    Compensatory Damages: Award Plaintiff compensatory damages in an amount to be determined at trial, to compensate for the violation of his constitutional rights, the loss of his property (video footage), emotional distress, and other pain and suffering caused by Defendants' actions;

    2.    Punitive Damages: Award punitive damages against the individual Defendants (Deputy Bassi, Assistant Director Ross, and Deputy Chief Covelli) in their personal capacities, to punish and deter the willful, reckless disregard of Plaintiff's rights and the outrageous conduct exhibited, as allowed by law;

    3.    Declaratory Judgment: Issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202, declaring that Defendants' actions – including threatening Plaintiff with arrest for recording, and forcing the deletion of Plaintiff's video recordings – violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Plaintiff does not seek injunctive relief, only a declaration of past and existing rights);

    4.    Preservation of Evidence: Order Defendants to preserve all evidence related to the May 23, 2025 incident, including any and all body-worn camera footage, security or surveillance video from the Adult Probation building, audio or

13

dispatch recordings, incident reports, and cell phone or email records, so that this evidence remains available for the litigation of this matter;

5. Expedited Discovery: Grant Plaintiff leave to conduct expedited discovery as necessary to obtain and secure the above-described evidence (such as video footage and communications) before it might be lost or overwritten, in order to prevent spoliation and ensure critical evidence is preserved;

6. Costs and Other Relief: Award Plaintiff his costs of suit and such other and further relief as the Court deems just and proper under the circumstances.

**Jury Trial Demanded**: Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

SeanPaul Reyes,

*[signature]*

Plaintiff, Pro Se

**SeanPaul Reyes**
**21 Mt Snow Lane**
**Coram, NY 11727**
**Telephone: 631-660-3544**
**Email: SeanPaulReyes91@gmail.com**
**Plaintiff, Pro Se**

**VERIFICATION**

I, SeanPaul Reyes, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Complaint and that the factual allegations therein are true and correct to the best of my knowledge, information, and belief.

Dated: May 27, 2025

_/s/ SeanPaul Reyes_

SeanPaul Reyes

Plaintiff, Pro Se