

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

SEANPAUL REYES,

                **Plaintiff,**

v.

MICHAEL BASSI,
CHRISTOPHER COVELLI, and
LAKE COUNTY, ILLINOIS,

                **Defendants.**

Case No. 1:25-cv-05873
Honorable John Robert Blakey

FILED
8/17/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JKS

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

    Defendants ask this Court to dismiss serious constitutional claims arising from the most basic press freedom: the right to record public officials in a public building. Deputies Bassi and Covelli threatened Plaintiff—an independent journalist—with arrest unless he deleted video files documenting official conduct in the publicly accessible lobby of a probation office. Plaintiff deleted his files only under coercion. Defendants seek refuge in immunity doctrines and claim the lobby is a "nonpublic forum" where recording may be prohibited wholesale. But their motion overreaches. No judicial officer ordered Plaintiff's arrest, and Administrative Order 21-09 nowhere authorizes officers to threaten obstruction charges or compel deletion of evidence. By inventing penalties, Defendants stepped outside any quasi-judicial function and into plainly unconstitutional conduct. The Complaint plausibly alleges violations of the First, Fourth, and Fourteenth Amendments. Defendants' immunity arguments fail on the pleadings, their forum analysis is over-broad, and their probable cause theory misstates the law. The motion should be denied.

**I. LEGAL STANDARD**

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Vinson v. Vermilion Cnty., 776 F.3d 924, 925 (7th Cir. 2015). Dismissal is improper unless immunity is "plainly applicable" on the pleadings without factual disputes. Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).

**II. DEFENDANTS ARE NOT IMMUNE**

**A. Quasi-Judicial Immunity Does Not Apply**

Quasi-judicial immunity is narrow: it shields officials strictly when executing specific judicial directives. Henry v. Farmer City State Bank, 808 F.2d 1228, 1239 (7th Cir. 1986). By contrast, in Richman v. Sheahan, 270 F.3d 430, 436 (7th Cir. 2001), deputies lost immunity because they went beyond judicial orders. The Seventh Circuit emphasized that "[t]he policies underlying quasi-judicial immunity have less force when … the challenged conduct is the manner in which the judge's order is carried out, and not conduct specifically directed by a judge." Id. at 436. The court noted that the plaintiff did "not allege that the deputies' conduct was specifically authorized by the judge" and thus immunity did not apply to the manner in which they executed their duties. Here, Defendants enforced no judicial order. AO 21-09 is an administrative rule about courtroom environs, directed primarily at court security officers' body cameras. It says nothing about deleting recordings or arresting members of the public for "obstruction." Deputies fabricated those penalties on their own initiative. That exceeds any judicial function and defeats quasi-judicial immunity. The administrative order says nothing in its four corners about deleting footage—there is no provision authorizing, let alone requiring,

2

officers to coerce the destruction of recordings. The order merely prohibits recording in specified areas; it does not prescribe deletion as a remedy or enforcement mechanism. Defendants' actions thus went far beyond any judicial directive. Under multiple circuits' precedents, officials get immunity for "strict compliance" with a valid court order, not for conduct that exceeds the order. Deleting Plaintiff's entire cache of videos and inventing an "obstruction" arrest threat were nowhere in the court's order—those acts exceeded the order's scope by a wide margin, so quasi-judicial immunity cannot attach. (Compl. ¶¶ 18, 21, 23.) Defendants' reliance on Cooper v. City of Waukegan, 1987 WL 10956 (N.D. Ill. 1987), is misplaced. Cooper involved recording immediately adjacent to juvenile courtrooms, under direct court supervision, and predates Richman. Here, the incident occurred in a probation lobby remote from courtrooms, without judicial oversight. Quasi-judicial immunity does not stretch this far. The rationale for quasi-judicial immunity is to protect the integrity of judicial decision-making by freeing those who implement a judge's direct orders from fear of lawsuit. That rationale does not apply here. Defendants were not implementing a judge's adjudication or judgment; they were enforcing a security rule at their own discretion. Granting immunity in such circumstances would actually encourage abuse, by giving officers a blank check whenever they claim to be enforcing some court policy. The Seventh Circuit warned against expanding quasi-judicial immunity in precisely this way in Richman and similar cases. Indeed, Richman noted that two other circuits (the Third and Eighth) have rejected quasi-judicial immunity for officers in comparable situations where the conduct was not specifically ordered by the judge. For instance, the Eighth Circuit held that officers get immunity only for conduct "specifically ordered by the trial judge and related to the judicial function." Here, no trial judge ordered anything—the Chief Judge's standing order certainly did not instruct deputies to summarily punish violators. Therefore, Defendants cannot

transform their unilateral actions into "judicial acts" deserving immunity. In their motion, Defendants suggest that because a judge could have held Plaintiff in contempt and seized or deleted the video, the deputies should enjoy the same immunity a judge would. This is a gross misapplication of the doctrine. By that logic, any police officer enforcing any law could claim quasi-judicial immunity because a judge somewhere authorized the law. That is not the law. Quasi-judicial immunity is reserved for those acting as an arm of the court under the court's explicit instructions. It is not a talisman to be invoked whenever officers enforce court rules. Finally, even if there were some doubt, quasi-judicial immunity is an affirmative defense that is fact-intensive; at the motion to dismiss stage, Plaintiff's allegations (which show the lack of a specific judicial directive and the excess of Defendants' actions) must be accepted. Richman was itself at summary judgment; at that point, the Seventh Circuit denied immunity. Here, on a pleadings challenge, it is even more clear that immunity cannot be decided in Defendants' favor. Therefore, Defendants Bassi and Covelli are not shielded by quasi-judicial immunity for the alleged conduct.

**B. Qualified Immunity Does Not Apply**

Qualified immunity fails because (1) Plaintiff alleges constitutional violations, and (2) the rights at stake were clearly established. By 2025, the right to record public officials in public areas was well settled. ACLU of Ill. v. Alvarez, 679 F.3d 583, 595–97 (7th Cir. 2012); Glik v. Cunniffe, 655 F.3d 78, 82–83 (1st Cir. 2011); Fields v. City of Philadelphia, 862 F.3d 353, 355–56 (3d Cir. 2017); Turner v. Driver, 848 F.3d 678, 690 (5th Cir. 2017); Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000). Threatening arrest without probable cause also violates clearly established Fourth Amendment law. Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012). And coerced destruction of evidence without judicial process offends due

process. Lee v. City of Chicago, 330 F.3d 456, 466 (7th Cir. 2003). Any reasonable officer would have known that threatening "obstruction" charges—where no statute criminalizes recording—and compelling deletion of evidence was unconstitutional. Kisela v. Hughes, 584 U.S. 100, 104 (2018). While qualified immunity can be decided at the dismissal stage in certain cases, it is generally inappropriate when facts are in dispute or when the plaintiff has alleged a blatant constitutional violation. Here, taking the facts as alleged, no reasonable officer could have believed that the actions taken against Plaintiff were lawful. The combination of these principles put Defendants on clear notice that their conduct was unconstitutional.

### III. PLAINTIFF STATES A FIRST AMENDMENT CLAIM

Recording government officials is core First Amendment activity. Alvarez, 679 F.3d at 595. Defendants' threat of arrest and forced deletion are classic retaliatory and prior restraint actions likely to deter future speech. Lavite v. Dunstan, 932 F.3d 1020, 1031 (7th Cir. 2019). Gathering information to disseminate to the public is a fundamental liberty safeguarded by the First Amendment's Speech and Press Clauses. The Supreme Court recognizes a right to receive and record information about government officials: "the First Amendment goes beyond self-expression to prohibit government from limiting the stock of information from which the public may draw." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 783 (1978). Consequently, the act of making a video recording is itself protected as an essential step in the creation of speech. Numerous courts of appeals have similarly affirmed a First Amendment right to film public officials performing their duties. Here, Plaintiff was not only recording public officials, he was doing so openly and peacefully in a publicly accessible lobby during business hours. He identified himself as an independent journalist and was gathering content for dissemination to his

2 million subscribers (Compl. ¶¶ 2, 12-13). This is classic news-gathering activity entitled to First Amendment protection. Defendants argue the probation lobby is a "nonpublic forum." But their cited cases involve courtroom interiors (Sefick v. Gardner, 164 F.3d 370 (7th Cir. 1998); Braun v. Baldwin, 346 F.3d 761 (7th Cir. 2003)) or adjacencies where judicial proceedings were ongoing (Dorfman v. Meiszner, 430 F.2d 558 (7th Cir. 1970)). A probation office lobby—open to the public—is materially different. At minimum, whether it qualifies as a designated forum or nonpublic forum is a factual question inappropriate for dismissal. While the government may impose reasonable time, place, and manner limits in nonpublic forums (like certain government offices), it cannot outright criminalize or punish the act of recording. The question is not whether Plaintiff had an unfettered right to film anywhere, but whether Defendants' response to his filming was a constitutionally permissible restriction. Plaintiff acknowledges that courthouses and sensitive government facilities can have security rules—but any enforcement of such rules must still comply with the First Amendment. Critically, the context here was a public lobby where Plaintiff was lawfully present. Defendants have not identified any specific disruption caused by Plaintiff beyond the act of recording itself. The lobby was open to the public; Plaintiff was not in a courtroom or private office area. Even assuming the probation lobby is a nonpublic forum, the ban on all recording still must be reasonable in light of the forum's purpose. Protecting probationers' privacy might justify a policy of no filming in certain areas, but forcing deletion of footage already taken does nothing to protect privacy—it only serves to censor and punish. At most, a reasonable restriction would be to direct the person to stop recording or leave the area if confidential matters are at risk. Plaintiff's allegations indicate he was willing to discuss the issue, but Defendants chose the most extreme course: permanent destruction of the recording and threat of jail. This response was not a reasonable, good-faith enforcement of a

rule; it was a punitive measure designed to silence Plaintiff's activity after the fact. As such, it triggers the highest First Amendment concern—it was essentially a content-based sanction on Plaintiff's speech (because it eliminated his captured content entirely). Even in a nonpublic forum, restrictions must be "reasonable in light of the purpose served by the forum" and viewpoint-neutral. Cornelius v. NAACP, 473 U.S. 788, 799–800 (1985). Here, the coerced deletion (post-recording and outside the building) is not reasonable—it does not protect privacy (which was already "breached" by the recording) and appears to discriminate against the viewpoint of journalists or First Amendment auditors who seek to expose government operations. See Sheets v. Punta Gorda, 415 F. Supp. 3d 1115, 1123 (M.D. Fla. 2019). Furthermore, the administrative order cited by Defendants did not clearly cover Plaintiff's activity. The sign referenced "courtrooms and court environs." Yet the Adult Probation building is a separate facility—an expansive interpretation. The actual text of the Chief Judge's order (which Defendants gratuitously inserted into their motion) does not list the probation office as a protected area, nor does it mention anything about deleting recordings. In short, Plaintiff was at least arguably within his rights to film there, and certainly his doing so was not a crime. Defendants do not get to unilaterally declare that the First Amendment simply did not apply in that lobby. The deletion demand made this even worse: it was an unconstitutional prior restraint, eliminating information already gathered for public dissemination.

**IV. PLAINTIFF STATES A FOURTH AMENDMENT CLAIM**

Seizure occurs when officers meaningfully interfere with property. United States v. Jacobsen, 466 U.S. 109, 113 (1984). Forcing Plaintiff to delete his digital recordings destroyed his property interest. Courts recognize digital files as highly protected. Carpenter v. United

7

States, 585 U.S. 296, 310 (2018); United States v. Ganias, 824 F.3d 199, 217 (2d Cir. 2016) (en banc). There is no question that Plaintiff had a possessory interest in the digital videos stored on his phone—those files were his property, the product of his time and effort. By ordering Plaintiff to permanently delete the files, Defendants directly interfered with his possession and use of that property. They essentially destroyed Plaintiff's property (through coercion), depriving him of it forever. Destruction or disposal of an owner's property is one of the clearest forms of "meaningful interference" with possessory rights, and thus constitutes a Fourth Amendment seizure. Defendants not only seized the videos, they effectively seized control of Plaintiff's phone during the deletion process (since Plaintiff had to manipulate it at their direction under threat). The complaint thus easily satisfies the threshold of alleging a seizure. (Compl. ¶¶ 22, 27-28.) The Fourth Amendment requires that seizures be "reasonable." Warrantless seizures are per se unreasonable unless they fall within a few narrow exceptions (none of which apply here). Defendants had no warrant to seize or destroy Plaintiff's recordings. Nor did any valid exception justify their actions. Defendants claim probable cause. But AO 21-09 is not a criminal statute. Violations may support a petition for indirect criminal contempt, which requires judicial process, not summary threats by deputies. People ex rel. Chicago v. Le Mirage, Inc., 2013 IL 113482, ¶ 7. Deputies had no authority to transform a civil order into a criminal arrest threat. What crime, exactly, did they suspect? Filming in a public lobby is not a crime. Violation of an administrative court order is not a criminal offense that a deputy can arrest someone for on the spot—the remedy is contempt of court, which must be handled by a judge. Illinois has no statute criminalizing the act of non-consensual recording in a government building (aside from its eavesdropping law which doesn't apply to visible recording and in any event would be unconstitutional if applied here). The only conceivable charge when someone refuses to stop

8

filming in a restricted area is criminal trespass—if the person is told to leave and refuses. But in this case, Plaintiff did not refuse to leave. The complaint implies that upon being told to leave, he either was leaving or had left the building; indeed the deletion demand was issued when Plaintiff was outside (where he undeniably had a right to film anything in plain view). At the moment Defendants insisted on deletion, Plaintiff was complying with any order to exit—thus, no trespass. (Compl. ¶¶ 20, 22-23.) Defendants instead threatened "obstruction of justice." Under Illinois law, obstruction of justice (720 ILCS 5/31-4) generally involves actions like concealing evidence, giving false information, or interfering with an investigation with intent to obstruct a specific official proceeding or investigation. Filming public officials is not obstruction. Importantly, in Reyes v. Volanti, 2025 WL 81346 (N.D. Ill. Jan. 8, 2025), the court upheld probable cause based on disorderly conduct—not merely violation of a recording ban or signage. Here, Plaintiff's silent recording was not disorderly and not criminal; it caused no disruption beyond the act itself, and Plaintiff complied with requests to move outside. No analogous criminal conduct existed to support probable cause. Instead, it is Defendants who arguably committed obstruction of justice by compelling deletion of video evidence documenting their conduct. See 720 ILCS 5/31-4 (prohibiting concealment or destruction of evidence to obstruct prosecution). Such irony underscores the baselessness of their threats: Defendants accused Plaintiff of a crime while arguably committing one themselves, further illustrating the absence of arguable probable cause and highlighting the retaliatory nature of their actions.

## V. PLAINTIFF STATES A DUE PROCESS CLAIM

Plaintiff had a property interest in his video files. He was deprived of that property through coercion under threat of arrest, with no notice or hearing. This was not voluntary. Lee,

9

330 F.3d at 466. The "option" of arrest is not meaningful process; it compounds the deprivation. Fuentes v. Shevin, 407 U.S. 67, 81 (1972). This claim has both procedural and substantive dimensions, each sufficiently alleged. Plaintiff was deprived of his property (the video footage, of obvious personal and expressive value) by government action, without any notice or opportunity to be heard. The Supreme Court has long held that when the government deprives an individual of property, it must generally provide "notice and a meaningful opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). There are very limited exceptions for seizures as part of the criminal process (where Fourth Amendment standards apply instead) or for truly exigent circumstances. Here, however, Defendants' actions did not comply with any established legal process—they bypassed it entirely. They did not obtain a warrant (no judicial oversight), did not initiate a contempt proceeding (no chance for Plaintiff to contest the alleged violation before a judge), and provided no post-deprivation remedy whatsoever. They simply demanded destruction of property on the spot. This is a textbook procedural due process violation. Plaintiff had a legitimate property interest in his recordings (and arguably a liberty interest in not being jailed for exercising his rights). The deputies, acting under color of state law, deprived him of that property interest summarily, in a manner not authorized by any statute or court order. Under Parratt v. Taylor, 451 U.S. 527, 541 (1981), if a state official randomly deprives someone of property, the existence of an adequate post-deprivation state remedy might sometimes satisfy due process. But that doctrine does not apply when the deprivation is authorized or overtly ordered by a policy (as here, where Covelli's directive was effectively a County policy). Nor does it apply to intentional deprivations where pre-deprivation process was feasible. Here, Covelli and Bassi acted pursuant to what appears to be a standard procedure—a planned practice, not a random rogue act. The

County can't claim it's random when a Deputy Chief approves it. Moreover, providing Plaintiff a hearing was entirely feasible—they could have retained the footage and let a judge decide its fate, rather than delete it irreversibly. They chose not to, thereby denying Plaintiff any process. Even after the fact, Plaintiff had no remedy to recover the unique footage—it was gone forever.

**VI. PLAINTIFF STATES A MONELL CLAIM**

Lake County is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), because its policymaker directed the violation. Deputy Chief Covelli ordered Plaintiff to delete his videos or face arrest. A single decision by an official with final policymaking authority is actionable. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). This can be shown through an explicit policy, a pattern of similar acts so frequent as to constitute custom, or a decision by a final policymaker. At the pleading stage, a plaintiff need only allege a factual basis that plausibly suggests the existence of such a policy or custom. Plaintiff has done so here. Key allegations supporting the Monell claim include: Directive from a High-Ranking Official: The unconstitutional action (forcing deletion or arrest) was expressly ordered by Deputy Chief Covelli, a high-ranking officer in the Lake County Sheriff's hierarchy. Covelli was not a low-level deputy, he was the Deputy Chief of the department. While perhaps not the final policymaker (the Sheriff is), a Deputy Chief's directives carry significant weight and are indicative of the department's practices. Covelli's order to "delete it or arrest him" was effectively the Sheriff's Office policy being applied in that moment. In Monell terms, Covelli's involvement moves this case out of the realm of a random one-off incident and into the realm of an official decision. Even a single decision by a policymaker can trigger Monell liability if that official has authority to establish policy for the subject matter. At a minimum, Covelli's order is

11

evidence of a custom or practice within the department—line deputies like Bassi do not call a Deputy Chief for guidance unless this situation has arisen before and there is a standard response. (Compl. ¶ 21.) Admissions of a Practice: Plaintiff alleges that after the incident, Deputy Bassi told him this outcome was routine—essentially admitting that the Sheriff's Office has a practice of coercing deletion of recordings from the public. That admission is strong evidence of an unconstitutional custom. A custom is shown by what is "persistent and widespread… so permanent and well settled as to constitute a custom or usage with the force of law." Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). According to Bassi, when confronted with someone recording, it was standard for Lake County deputies to demand deletion and threaten arrest. The County had presumably never instructed otherwise, effectively ratifying this practice. The complaint's allegations put the County on notice that discovery will likely uncover other instances of this practice, or at least confirm it was a directive given from higher-ups. (Compl. ¶ 24.) Probation Office Coordination: This coordination suggests an inter-departmental understanding—the Probation Department expected the Sheriff's Office to handle "auditors" by forcing deletion. It implies a policy communicated between the court-related entities and the Sheriff's law enforcement arm. Lake County (through the Sheriff) chose a specific method of enforcement: rather than simply remove violators, they would threaten obstruction and delete recordings.While Illinois sheriffs are independently elected, the Seventh Circuit recognizes them as county policymakers for §1983 purposes. Thompson v. Duke, 882 F.2d 1180, 1187 (7th Cir. 1989). Covelli's directive therefore constitutes county policy.

**VII. CONCLUSION**

Plaintiff plausibly alleges grave constitutional violations: retaliation against protected news-gathering, seizure and destruction of digital property without probable cause, and deprivation of due process—all carried out pursuant to county policy. Defendants' motion stretches immunity beyond recognition, mischaracterizes forum doctrine, and misstates probable cause. The motion should be denied. Should the Court have any doubt about the sufficiency of the pleadings, Plaintiff alternatively requests leave to amend the complaint to cure any perceived deficiencies. However, no amendment is needed—the complaint, as it stands, provides a solid legal and factual basis for each claim. This case should proceed to discovery and, ultimately, to a determination on the merits of whether Defendants' "delete it or jail" policy is lawful (it is not). The Constitution demands no less than a full adjudication of such grave infringements.

Respectfully submitted,

/s/ Sean Paul Reyes
Sean Paul Reyes
Plaintiff, Pro Se
21 Mt. Snow Lane
Coram, NY 11727
Tel: 631-660-3544
Email: SeanPaulReyes91@gmail.com