UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEANPAUL REYES, | ) |
| Plaintiff, | ) Case No. 25-cv-5873 |
| v. | ) |
| MICHAEL BASSI, CHRISTOPHER COVELLI, and LAKE COUNTY, ILLINOIS, | ) Judge John Robert Blakey |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff SeanPaul Reyes, a self-described "independent journalist," alleges that Lake County Sheriff's Deputy Michael Bassi and Deputy Chief Christopher Covelli violated his First, Fourth, and Fourteenth Amendment rights when they threatened to arrest him unless he deleted video recordings he captured in the lobby of the Lake County Adult Probation & Psychological Services Building.[1] [1] He also asserts a *Monell* claim against Lake County. *Id.* Defendants move to dismiss all claims under Rule 12(b)(6), [22], and, for the reasons stated below, the Court grants the motion.

---

[1] Plaintiff initially also sued Jeff Ross, the Assistant Director of the Lake County Adult Probation Department, *see* [1]. But he voluntarily dismissed this defendant with prejudice on July 29, 2025, *see* [26].

I. **The Complaint's Allegations**[2]

In his complaint, Plaintiff alleges that, on May 23, 2025, he made video recordings in the public lobby of the Adult Probation Building in Waukegan, Illinois, [1]. Plaintiff filmed in the lobby despite posted signs that ban recording "in courtrooms or their environs." [1] ¶ 15. Plaintiff alleges that a "posted sign cannot override the Constitutional right to film in a public area" and that his recording constituted "a lawful exercise of First Amendment freedoms." *Id.* ¶ 16. While Plaintiff was filming, Lake County Deputy Sheriff Michael Bassi arrived on the scene and advised Plaintiff that he needed to cease recording; Defendant Bassi told Plaintiff that the lobby fell within the "environs," but Plaintiff disagreed initially. *Id.* ¶¶ 17–19. Nevertheless, Plaintiff, not wishing to escalate the confrontation, decided to leave. *Id.* ¶ 20.

Before Plaintiff left the building, however, Deputy Bassi told him he had to delete any video recordings he had already made. *Id.* Once outside, Bassi told Plaintiff that, if he refused to delete the video footage, he would be arrested. *Id.* At Plaintiff's request, Bassi called a supervisor, Deputy Chief Christopher Covelli, who explained that Plaintiff had two options: he could delete whatever video he had recorded, or he could be arrested and have his phone confiscated. *Id.* ¶ 21. Plaintiff deleted the footage. *Id.* ¶ 22.

Four days later, Plaintiff sued, filing a pro se complaint claiming: (1) First Amendment retaliation; (2) unlawful seizure in violation of the Fourth Amendment;

---

[2] For purposes of resolving the motion to dismiss, the Court accepts as true all facts in Plaintiff's complaint. *See Killingsworth v. HSBC Bank Nevada,* 507 F.3d 614, 618 (7th Cir. 2007).

2

and (3) deprivation of property without due process in violation of the Fourteenth Amendment; he also asserts a *Monell* claim, alleging that Lake County has an official policy of unlawfully interfering with citizens' recordings of public officials and failing to train officers adequately "on the public's well-established right to record." *Id.* ¶¶ 25–33. He seeks compensatory damages, punitive damages, and a declaratory judgment. *Id.* at 13–14. Defendants move to dismiss all claims, arguing that Plaintiff has failed to plead any valid constitutional claims and that his claims remain barred under the doctrines of quasi-judicial and qualified immunity, [22].

## II.  Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678. In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however, accept

3

a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Analysis

#### A. The Sufficiency of Plaintiff's Allegations

Plaintiff alleges First Amendment retaliation, unreasonable seizure in violation of the Fourth Amendment, and violation of the Fourteenth Amendment's due process clause. *See* [1]. The Court considers the sufficiency of his allegations as to each claim below.

##### 1. First Amendment Retaliation

To state a claim for First Amendment retaliation, a plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered an adverse action that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to retaliate. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019); *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012). Here, Plaintiff alleges that "recording government officials in a public building was protected First Amendment activity," and "Defendants' conduct—threatening Plaintiff with arrest and coercing him to delete his recordings—was taken in direct response to, and in retaliation for, Plaintiff engaging in that protective activity (filming a public lobby and public officials)." [1] ¶ 25. These allegations constitute legal conclusions, which the Court need not accept. And, in fact, recording government officials in a public

4

building may not be activity protected by the First Amendment under the circumstances described in the complaint.

To be sure, gathering information about government officials in a form that "can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 601 (7th Cir. 2012) (quoting *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011); *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). But Plaintiff wrongly assumes that this right encompasses an unqualified right to record government officials or proceedings in spaces, like the building at issue here, where court proceedings and court-related proceedings occur. *See, e.g., Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009) ("a government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects," and, in such a forum, "a government entity may impose restrictions on speech that are reasonable and viewpoint neutral"); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 586 (1980) ("Read with care and in context, our decisions must therefore be understood as holding only that any privilege of access to governmental information is subject to a degree of restraint dictated by the nature of the information and countervailing interests in security or confidentiality."); *Enoch v. Hamilton Cnty. Sheriff's Off.*, No. 22-3946, 2024 WL 3597026, at *4–5 (6th Cir. July 31, 2024), *cert. denied sub nom. Enoch v. Hamilton Cnty. Sheriff 's Off.,* 145 S. Ct. 1429 (2025) (holding that the courthouse hallway constitutes "a limited public forum," where one's "right to gather news about matters

5

of public importance could be restricted by regulations that are 'viewpoint neutral and reasonable in the light of the purpose to be served by the forum.'") (quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019); *Richmond Newspapers*, 448 U.S. at 577–78); *Benzing v. North Carolina*, No. 317CV000619KDBDCK, 2020 WL 3439558, at *6 (W.D.N.C. June 23, 2020), *aff'd sub nom. Benzing v. Treadway*, 827 F. App'x 350 (4th Cir. 2020) (declining to find that plaintiff had "an absolute First Amendment right to carry and use a cell phone in the Mecklenburg County probation office."); *Gipson v. Hamilton Cnty. Ct. of Common Pleas*, No. 23-3575, 2024 WL 3419090, at *3 (6th Cir. Apr. 10, 2024) ("The government may restrict speech so long as the restrictions are viewpoint neutral and reasonable in the light of the purpose to be served by the forum."); *United States v. Hastings*, 695 F.2d 1278, 1280 (11th Cir. 1983) (noting that the "right of access to observe criminal trials" does not extend to "the right to televise, record, and broadcast trials").

In his complaint, Plaintiff acknowledges that signs posted in the lobby of the Lake County Adult Probation & Psychological Services Building banned recording in the courtrooms or in court environs. Additionally, he alleges that, although he initially believed the lobby fell outside the ban, *see* [1] ¶ 18, before leaving the building, he observed "that the sign had defined the Adult Probation Office [as] an 'environ.'" *Id.* ¶ 20. He does not allege that the recording ban itself was unreasonable (nor explain how), but he instead asserts an unqualified right to record in the building lobby, despite conceding that the lobby remained covered by a judicially ordered recording ban. Having merely asserted in a conclusory fashion that Defendants had

6

"no lawful justification to demand that Plaintiff stop filming or destroy his footage," [1] ¶ 26, his First Amendment claim remains facially implausible.

### 2. Unreasonable Seizure Under the Fourth Amendment

In Count II, Plaintiff alleges that, when Defendants compelled him to "delete his video files under threat of arrest," they "effectively seized and destroyed Plaintiff's property." [1] ¶ 27. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In general, under this amendment, a warrantless search, like a warrantless arrest, "must be supported by probable cause." *United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996); *see also United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020). Although generally a seizure is reasonable only when based upon probable cause, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Eymann*, 962 F.3d at 282.

Reasonable suspicion requires "more than curiosity, inchoate suspicion, or a hunch." *United States v. Cole*, 994 F.3d 844, 849 (7th Cir. 2021), *reh'g en banc granted, opinion vacated*, No. 20-2105, 2021 WL 2363773 (7th Cir. June 9, 2021). When observed by trained law enforcement officers, however, "objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *United States v. Cortez*, 449 U.S. 411, 419 (1981). Moreover,

7

because this Court evaluates reasonable suspicion in light of the totality of the circumstances, certain behavior "may give rise to reasonable suspicion when viewed in the context of other factors at play." *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Ultimately, determining whether "reasonable suspicion exists is not an exact science, and 'must be based on commonsense judgments and inferences about human behavior.'" *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). In evaluating whether reasonable suspicion exists, the "subjective beliefs or intentions of law enforcement officers are irrelevant"; instead, courts ask whether the facts available to an officer at the time of the seizure "would warrant a person of reasonable caution in the belief that the action taken was appropriate." *United States v. Wanjiku*, 919 F.3d 472, 487 (7th Cir. 2019); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that the Court has "been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers").

In this case, the allegations establish that Plaintiff was recording in a space where signs precluded recording by court order, and the Defendants' observations provided them with ample reasonable suspicion/probable cause that Plaintiff engaged in unlawful conduct.[3] *See, e.g., Bergquist v. Milazzo*, No. 18-CV-3619, 2021 WL

---

[3] Here again, Plaintiff alleges that, around noon on May 23, 2025, he "entered the Lake County Adult Probation & Psychological Services Building" and "began peacefully recording video in the publicly accessible lobby." [1] ¶¶ 12, 13. Shortly "after he began recording, a courthouse security officer approached and told Plaintiff that recording was prohibited." *Id.* ¶ 14. Courthouse staff "pointed to a sign on the wall that purported to ban recording in 'courtrooms or its environs,'" and Plaintiff explained that "a posted sign cannot override the Constitutional right to film in a public area." *Id.* ¶¶ 15–16. Defendant Bassi "then arrived on the scene," told Plaintiff, "that the probation department lobby was considered an 'environ' of the court where recording was prohibited and that plaintiff needed to cease recording." *Id.* ¶ 17. Although he initially disagreed that the adult probation office constituted an

8

4439422, at *8 (N.D. Ill. Sept. 28, 2021) (finding that officers who observed plaintiff filming had probable cause to believe plaintiff violated the general administrative order prohibiting filming inside the courthouse).

As such, Plaintiff has failed to allege any unconstitutional conduct in the Defendants' response on scene. Given the totality of the facts available to the officers who viewed Plaintiff's behavior, as well as his initial lack of cooperation, "a reasonably prudent person" in the officers' position would "think that Plaintiff had committed or was committing a crime." *United States v. Hill*, 818 F.3d 289, 295 (7th Cir. 2016); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Based upon Plaintiff's allegations, Defendants' conduct remained consistent with the Fourth Amendment, and the Court thus agrees that Plaintiff has failed to state a claim for a constitutional violation.

### 3. Violation of Due Process and the Fourteenth Amendment

Plaintiff next claims that Defendants deprived him of his property (the digital video files on his phone) without due process of law. But the Supreme Court has held that, where "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be

---

"environ," Plaintiff left the building, "after seeing that the sign had defined the Adult Probation Office as an 'environ.'" *Id.* ¶ 20.

9

the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiff has alleged that the seizure of his property violated the Fourth Amendment, and, for the reasons explained in this decision, that claim fails. Invoking the due process clause of the Fourteenth Amendment does not change that outcome.

### B. Immunity

Defendants also argue that, to the extent Plaintiff has stated any viable constitutional claim, the doctrine of quasi-judicial immunity otherwise shields them from liability as to any such claim. *See* [22]. They also assert qualified immunity. *Id.* Although immunity constitutes a defense, a trial court can and should resolve immunity issues at the motion to dismiss stage if the facts alleged in the complaint, accepted as true, fail to establish a violation of a clearly established constitutional right. *E.g. Danilkowicz v. City of Park Ridge*, No. 13 C 3103, 2013 WL 4401428, at *2 (N.D. Ill. Aug. 15, 2013) (citing *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994)). As explained below, that is the case here.

Both quasi-judicial and qualified immunity provide immunity from suit as well as immunity from liability; the former "protects non-judicial officials whose official duties have an integral relationship with the judicial process"; and the latter "protects governmental officers performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dunn v. City of Elgin*, 347 F.3d 641, 646–47

(7th Cir. 2003) (citing *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir. 1986); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982)).

Quasi-judicial immunity "is a type of absolute immunity that protects members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge or prosecutor." *Wilson v. Illinois Dep't of Fin. & Pro. Regul.*, 376 F. Supp. 3d 849, 864 (N.D. Ill. 2019) (citing *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011); *Butz v. Economou*, 438 U.S. 478, 512–13 (1978)). The doctrine reflects the notion that "officials making quasi-judicial decisions should be free of the harassment and intimidation associated with litigation." *Zoretic v. Darge*, 832 F.3d 639, 643 (7th Cir. 2016) (citing *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001)). Quasi-judicial immunity may apply when judicial officers "are sued for engaging in 'quasi-judicial' functions, that is, functions that are similar to those a judge performs." *Id.* The touchstone of this analysis is "whether the officer is engaged in discretionary functions, such as 'resolving disputes between parties, or authoritatively adjudicating private rights.'" *Id.* at 643–44 (quoting *Snyder v. Nolen*, 380 F.3d 279, 288 (7th Cir. 2004). Quasi-judicial immunity may also apply to officers who engage in a non-discretionary or administrative function, but do so at the explicit direction of a judicial officer. *Id.* at 644. To receive immunity, officers must be "acting pursuant to an enforceable order." *Id.* (citing *Dunn*, 347 F.3d 641).

In his complaint, Plaintiff alleges that signs on the wall of the lobby "purported to ban recording in courtrooms or its environs," and he alleges that "a posted sign cannot override the Constitutional right to film in a public area." [1] ¶¶ 15, 16. He

11

further alleges that Deputy Bassi referred to the sign when advising Plaintiff that he could not videotape in the lobby; he also alleges that, although he initially believed the lobby fell outside the ban, the language of the sign actually supported the instructions from courthouse staff (and Defendants) that the lobby constituted "court environs." *Id.* ¶¶ 17, 18, 20 ("the order's description of 'courtroom environs' was limited to spaces like hallways adjacent to courtrooms, jury assembly rooms, deliberation rooms, and similar areas inside court facilities," but Plaintiff nonetheless agreed to leave the building "after seeing that the sign had defined the Adult Probation Office [as] an 'environ.'").

Indeed, Plaintiff's allegations concede that the signs reflected the mandate spelled out in "Nineteenth Judicial Circuit Administrative Order No, 21-09." *Id.* ¶ 17. The signs, which this Court may consider for purposes of resolving the current motion, *see Stewart v. JPMorgan Chase Bank, N.A.,* 716 F. Supp. 3d 677, 685 (N.D. Ill. 2024) (The court "may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6).") (citing *White v. Keely*, 814 F.3d 883, 886 (7th Cir. 2016)); *Gray v. Vill. of Hazel Crest*, No. 21-CV-6372, 2022 WL 2181428, at *1 (N.D. Ill. June 16, 2022) ("When presented with a motion to dismiss, the Court may 'take judicial notice of matters of public record'" and "consider documents attached to a motion to dismiss 'if they are referred to in the plaintiff's complaint and are central to her claim.'") (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014)), explicitly define "environs" to include "Adult Probation and Psychological

12

Services." *See* [22] at 2. The sign also indicates that the prohibition on recording stems from "Administrative Order 21-09 Authorized by the Chief Judge of the Nineteenth Judicial Circuit." *Id.* When an "exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); *Stewart,* 716 F. Supp. 3d at 685.

Plaintiff either concedes in his allegations that the lobby fell within the ban, [1] ¶ 20, or alleges that the lobby fell outside the ban, *id.* ¶¶ 17–19. Either way, Plaintiff's allegations demonstrate that he is challenging conduct specifically directed by the judge (whether via the Order or based upon the posted signs stemming from the Order), and is not challenging the manner in which the directive was carried out. As a result, Defendants remain entitled to quasi-judicial immunity. *E.g., Richman v. Sheahan,* 270 F.3d 430, 437 (7th Cir. 2001) ("for court personnel and adjuncts who do not exercise a discretionary function comparable to a judge's, the justification for extending absolute immunity is most compelling when the lawsuit challenges conduct specifically directed by the judge, and not simply the manner in which the judge's directive was carried out.").

Defendants are also entitled to qualified immunity. The doctrine of qualified immunity "balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and 'affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices' on the other." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th

Cir. 2021) (quoting *Weinmann v. McClone*, 787 F.3d 444, 447–48 (7th Cir. 2015)). In determining whether qualified immunity applies, courts ask: (1) whether an official's conduct violated a constitutional right; and if so, (2) whether that right was clearly established at the time of the alleged violation. *Id.* A right is "clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (quoting *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015)). Under the law, the Plaintiff bears the burden of establishing that the constitutional right was clearly established. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015).

Here, Plaintiff claims Defendants violated his clearly established right to record government officials. Certainly, the "act of making an audio or audiovisual recording" is included within the First Amendment's guarantee of speech and press rights "as a corollary of the right to disseminate the resulting recording." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). But his allegations fly only when taken at a "high level of generality" without considering the "specific context of the case"—something the Supreme Court has repeatedly cautioned against. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see also Leiser v. Kloth*, 933 F.3d 696, 702 (7th Cir. 2019) ("In deciding a question of qualified immunity, the level of specificity at which the legal question is asked is often decisive, and it is possible to be too general and too specific."), *cert. denied*, 140 S. Ct. 2722 (2020). The relevant constitutional right is

14

not whether a person can film government officials, but whether Plaintiff had the right to be free from an investigatory detention when a courthouse officer learned that he was filming inside the court environs (and when he, in fact, did film inside the court environs), and also whether Plaintiff had the right to maintain recordings made in clear violation of a judicial order. In the absence of any clearly established precedent forbidding the officers from acting under these circumstances, Defendants remain entitled to qualified immunity as to Plaintiff's claims. *See Taylor v. Ways*, 999 F.3d 478, 491 (7th Cir. 2021) (noting that a plaintiff overcoming a qualified immunity defense must show that the wrongfulness of the defendant's conduct was clearly established).

### C. Plaintiff's *Monell* Claim

Finally, Defendants argue that Plaintiff cannot state a *Monell* claim, and they thus seek dismissal of Count IV. Municipalities may certainly be sued directly under § 1983 for monetary, declaratory, or injunctive relief. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978). Three scenarios can give rise to municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Arquero v. Dart*, 587 F. Supp. 3d 721, 728 (N.D. Ill. 2022) (citing *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)). But "the

15

first step in every § 1983 claim, including a claim against a municipality under *Monell*" is for the plaintiff to "prove that he was deprived of a federal right"; a *Monell* plaintiff "must establish that he suffered a deprivation of a federal right before municipal fault, deliberate indifference and causation come into play." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

Plaintiff alleges that the "directive to delete Plaintiff's recordings—issued by Deputy Chief Covelli and enforced on the ground by Deputy Bassi—reflects an official policy or a widespread custom of Lake County (through its Sheriff's Office) to unlawfully interfere with citizens' recordings of public officials." [1] ¶ 31. As explained above, however, Plaintiff's understanding that the Constitution guarantees him an unfettered right to record in the Lake County Adult Probation & Psychological Services Building remains untethered to the law. Plaintiff's complaint alleges that signs posted in the lobby banned recording, and, although he initially believed the space was excluded from the ban, he later learned that the building was, in fact, covered by the ban. In short, the facts as alleged in the complaint fail to suggest a predicate constitutional violation, and his *Monell* claim thus fails. *Hall v. City of Chicago*, 953 F.3d 945, 955 (7th Cir. 2020); *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018). *See also Fulton v. Bartik*, 547 F. Supp. 3d 799, 819 (N.D. Ill. 2021) ("*Monell* liability cannot survive without an underlying constitutional violation by an individual defendant.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

16

## IV. Conclusion

For the reasons explained above, the Court finds that Plaintiff has failed to state a claim for any constitutional violation and that, in any event, Defendants remain immune from suit. The Court thus grants Defendants' motion to dismiss [22] and dismisses Plaintiff's complaint. Additionally, because further amendment would be futile,[4] the Court dismisses this case with prejudice. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) ("Although Rule 15 states that leave to amend shall be "freely given," it may be denied where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile"; "an amendment may be futile when it fails to state a valid theory of liability, or could not withstand a motion to dismiss."). Civil case terminated.

Dated: March 2, 2026                Entered:

                                    _____
                                    John Robert Blakey
                                    United States District Judge

---

[4] Amendment would be futile because Plaintiff's claims stem from his mistaken belief that the Constitution guarantees him the unqualified right to record in the relevant space (it does not) and based upon his admissions in his complaint that signs in the lobby banned recording in specified spaces, including (he realized, after reading the Order) the very space in which he was recording.